The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. You may be seated. Good morning and welcome to the Fourth Circuit. We're ready to hear argument in our first case. Whenever you're ready. Mr. Sukup? Yes. May it please the Court. Jeffrey R. Sukup for the petition. Your Honor, this is a federal blackmail appeal with a fairly complex procedural history, including three benefits decisions by two different ALJs, with a separate benefits review board decision reviewing each of the ALJ decisions. The issue at the heart of the appeal, though, is quite simple. When supported by substantial evidence and consistent with the law, the fact findings of ALJs must be deferred to by the board, and they must be deferred to in both benefits denials and benefits awards. But there's two different ALJs to be deferred to here. So what do we do in that instance? Well, in the instance, essentially the problem here is fact findings must be deferred to by, the board must defer to the fact findings of both ALJs. But the problem here is that the board did not defer to the fact findings of ALJ Krantz, who denied benefits. They only deferred to the fact findings of ALJ Johnson, who awarded benefits in this case. And that can be seen in both of the two ultimate legal findings that are at issue in this case. The finding of whether the employer rebutted the presumption of legal pneumoconiosis and the finding of whether the claimant established the disease known as complicated pneumoconiosis. What if we find that both ALJs' opinions were supported by substantial evidence? What should we do then? Well, if you find that both are supported by substantial evidence, you have to reinstate ALJ Krantz's benefits denials because in that situation, there would have been no basis for the board to vacate and remand ALJ Krantz's denials. The result of finding it supported by substantial evidence means the board should have affirmed the benefits denials. So because Krantz was first in time, the Krantz opinion should stand? Is that what you're saying? Yes. If his decision was supported by substantial evidence, there's no basis to vacate to another ALJ to then re-review the fact findings and decide whether or not benefits should be awarded in that case. That's why this is so complicated procedurally. It's just the effect of the fact that when the board vacates, it's not a final order and it can't be reviewed until ultimately the decision becomes a final award, whether it's affirmed or totally reversed. With respect to the two issues that I mentioned before, legal pneumoconiosis and complicated, I'll focus on ALJ Krantz's decisions in this case, or at least for my opening here. ALJ Krantz found the presumption of legal pneumoconiosis rebutted by deferring, or excuse me, by crediting Dr. Castle's opinion. He found that Dr. Castle was well-reasoned and that there was no reason to discredit Castle on the ground that Dr. Castle found that pneumoconiosis generally results in a mixed, obstructive, and restrictive impairment, which is not what he claimed that Mr. Bell had. ALJ Krantz said that this finding is entirely consistent with this court's decision, this not contrary to the definition of pneumoconiosis. The board did not defer to that finding. It remanded and asked ALJ Krantz to re-examine an issue he had already examined, whether Dr. Castle's finding of mixed, obstructive, and restrictive impairments is contrary to the definition of pneumoconiosis. ALJ Krantz said it's not, and that's supported by this court's stilter decision. So I would submit there is no basis for the board to vacate that decision denying benefits because ALJ Krantz had already reached a discretionary fact finding that the board simply refused to defer to. This refusal to defer to fact findings is also evident on the issue of complicated pneumoconiosis. ALJ Krantz found that the claimant failed to establish complicated pneumoconiosis because he deferred to the x-ray reading of Dr. Shipley, who ALJ Krantz interpreted Dr. Shipley's report as saying that there are no large opacities of anything. That's basically a prerequisite to finding complicated pneumoconiosis. You have to have what's called a large opacity, which basically is defined as opacity greater than one centimeter in diameter. ALJ Krantz examined Dr. Shipley's opinion and said Dr. Shipley's not finding any large opacities, whether due to pneumoconiosis or anything else. What about all the other doctors that did find pneumoconiosis? Are you talking about complicated pneumoconiosis? Only Dr. Forehand found complicated pneumoconiosis. Dr. Castle did not. Dr. Shipley did not. They were the only physicians reviewing the x-rays in this case. What did ALJ Krantz find with respect to Forehand? He found that Dr. Forehand's opinion was not credible. Did he give a basis for that? Well, let me back up a little bit. The way he found Dr. Forehand's opinion on legal pneumoconiosis is not credible. The way he resolved the issue of complicated was he credited Dr. Shipley's report based on Dr. Shipley's professional credentials. He said Dr. Shipley is a board-certified radiologist and what's known as a B-reader, whereas Dr. Forehand is only a B-reader and Dr. Castle is also only a B-reader. So he credited Dr. Shipley's report based on Dr. Shipley's credentials. So the non-credible finding we think only applies in the legal context, not the complicated context. The credibility finding of Dr. Forehand's on Forehand is applicable only in the legal context, not in the complicated context. I don't think he reached a finding about the relative credibility of Forehand on Complicated. I think he just said that I'm crediting Shipley's report because of his credentials and because of that claimant can't meet his burden to establish Complicated. But yes, with respect to legal pneumoconiosis, he, actually both Krantz and Johnson found that Forehand was not credible on the issue of legal pneumoconiosis because he didn't explain his opinion. But continuing with Complicated, A.L.J. Krantz again credited Dr. Shipley. The board on the first remand, the board's first appeal remanded back to A.L.J. Krantz to say, well, isn't Shipley speculative? A.L.J. Krantz addresses this issue and said, no, he's not. And he explained why, giving several reasons why it's not speculative. The board, and again on second appeal, did not accept this finding. They remanded again saying, well, you need to consider this other evidence to determine whether he's really speculative. Well, that's really second guessing what's in A.L.J.'s discretionary fact finding. A.L.J. Krantz explained the basis for finding that Shipley is not speculative. He's credible because he is deferring to his professional credentials, and that was a sufficient basis to credit his opinion. So given the principles inherent in the Benefits Review Board's appeal authority, these are discretionary fact finds that should have been deferred to on appeal by the board in both the first and the second appeals. The board refused to do that. Talk to me a little bit about, and I may mispronounce the name, Dr. Gio's decision. His opinion? That's the one that struck me. The board at least had the strongest basis for questioning his analysis. Tell me what you do with that. Well, the board, I think this was on the second appeal. The board found that Gio's, well, it didn't find anything. The board remanded for A.L.J. Krantz to determine whether Dr. Gio merited any weight because Dr. Gio concluded that the claimant was not totally disabled. I guess what I would say to that is that Which was inconsistent with other information already provided. It was inconsistent with the findings of the other physicians and the finding of the L.J. Yes. I guess what I would say to that is that that doesn't say everything in the board's decision because first of all, A.L.J. Krantz primarily found the presumption of legal pneumoconiosis rebutted by accrediting Dr. Castle's report. Dr. Gio, essentially the most he said about Dr. Gio and his finding of rebuttal. When you say primarily relied on Castle, in essence you're saying even if Gio was totally wrong, it's harmless, it doesn't matter, it wouldn't have affected Krantz's decision. Yes, I think so. And you can see that on, this is in Joint Appendix 170 to 171. This is where Dr., excuse me, this is where A.L.J. Krantz is examining the rebuttal question. He clearly places the most weight, if not exclusive weight, on Castle in finding rebuttal. And the most he says about Gio is that Gio's conclusions mirrored Dr. Castle's. So basically he is giving, I think it's fair to say he is giving Gio some weight, but he's also saying Gio does not get anywhere near as much weight as Castle. He made that specific finding. And he said that at most Gio's opinions mirrored Dr. Castle's. So Dr. Castle is getting the weight here. It's Dr. Castle that he's finding is sufficient to rebut the presumption. And that finding that the board set aside is simply not supported by its own standard review or by this court's published decision in Stiltner, which says that opinions like Dr. Castle's are contrary to the definition of pneumoconiosis. If I can go back just for a second to the beginning. Sure. Why do we get to, and I think you raised this issue, but I want to make sure that you're fully asserting this. They don't take issue with any of your discussions about A.L.J. Krantz, neither Mr. Bell or the government. I guess Mr. Bell argues law of the case. But putting that issue aside, they don't take issue on the merits of A.L.J. Krantz. Is it your position that that means they forfeit that argument completely and we don't need to evaluate whether any of the things you've talked about, as long as we find that Krantz's decisions are reviewable, then we don't have to reach the merits because they forfeited the arguments otherwise. I think they have forfeited any response to my arguments by explicitly waiving. I think the government actually explicitly waived in its brief and not just forfeited. But yeah, I mean, to be honest, I kind of approach this oral argument with the understanding that these particular arguments are not contested because that's listed in the brief. To the extent that, are you asking whether that means that. I'm just trying to ask, do you think we need to reach the merits at all here or do we need to simply find that, as Judge Thacker indicated, Judge Krantz was first in time. We can review those decisions and, you know, we've talked a little bit about why those are reviewable. But once we make that finding, the failure of Mr. Bell and the government to respond to your arguments means that we're finished at that point, that they have forfeited, waived. We can talk about the distinction between those two. But once that issue has been waived or forfeited by the other side, we can stop at that point. Well, I think it's within the court's authority to examine my arguments and determine whether they're right or wrong. But why need we? I guess what I'm asking is, you should, it seems like to me, you should win without examining them. You seem hesitant. That's why I'm curious. You seem to hesitate a little bit in your reply brief. That's why I'm asking. I'm just trying to determine whether it, I certainly think the government and to some extent the claimant have forfeited or waived any opportunity to respond to these arguments today. I'm not necessarily sure that binds the court in what it should or should not do with respect to those arguments. But certainly I think as a matter of your discretion, you could find that any contrary arguments have been waived and don't need to be even raised or approached in the court's decision. And I think it's appropriate from that juncture to go ahead and review A.L.J. Prance's decisions and if you agree with me, to re-institute the denials of benefits. Does that address your question? Yes. I guess continuing on with respect to the issue of complicated pneumoconiosis, a lot of hay has been made by the board in this case about the effect of this court's Westmoreland Colby-Cox case. This is kind of a seminal case on the issue of complicated pneumoconiosis. And what it essentially holds is that where the record establishes, I mean, clearly establishes the presence of large opacities of whatever etiology, if you have an x-ray reviewer who recognizes that there are large opacities, but says, I think they're due to something else, not co-aligned to us, but to some other disease, the A.L.J. has discretion at that point to reject that x-ray reviewer's opinion as speculative or unreasoned. The problem is, as A.L.J. Prance pointed out in its decisions, and as I would submit the board didn't recognize, the Cox case really has no application to the evaluation of Dr. Shipley's opinion because A.L.J. Prance interpreted that opinion not as saying, well, I recognize there's a large opacity, but I think it's due to something else. He said Dr. Shipley reviewed the x-ray and found no large opacity present. So it's not a question of simply using Cox to say, well, I'm required to find Dr. Shipley to be speculative because he can't explain what the large opacity is due to. Dr. Shipley is saying there is no large opacity, whether due to pneumoconiosis or anything else. That is a finding that's an interpretation of a medical opinion, which is a pristine matter that's within an A.L.J.'s discretion as a fact finder. Again, this is an example of the board simply refusing to accept the fact finder's discretionary fact finding and again, remaining to really look at the evidence strongly to see whether it's speculative. It seems to me that looking at all three of these decisions, the board is exhibiting a tendency to not, to simply refuse to defer to fact findings that it may find questionable, but that is not the area that the board is supposed to be in. It's not supposed to weigh evidence. It is supposed to look at what the A.L.J. has found, and if it is at least supported by substantial evidence and not contrary to law, to affirm those findings. They refused to implement that principle of A.L.J. Prance, and they were ready and willing to do that with A.L.J. Johnson when he reached contrary fact findings. I think if you look at these decisions, you will find that this is an inconsistent application of the review standard, and it merits, if not compels, a finding that A.L.J. Prance's benefits denials must be reinstated. To be honest, unless there are any other questions, I conclude my argument. Do you have questions? All right, thank you. Thank you. We'll hear from opposing counsel, Mr. Smith. May it please the Court, I'm S.F. Raymond Smith. I am here to represent Mr. Bell. The decision of the Benefits Review Board, which is before this Court, was reviewing the decision of Judge Johnson, who, unlike Judge Prance, actually evaluated all the evidence in the claim,  findings of both Dr. Shipley as well as Dr. Castle and Dr. Geo, made reference to both the actual record in the claim as well as the findings of this Court. And the argument of the CWP Fund is we should not look at that, but say that because Judge Prance said that he made findings of fact regarding the nature of Dr. Shipley's findings and the weight to be accorded to them, that means that these exist and that it immunizes those findings from review by either the Benefits Review Board or possibly this Court on the theory that somehow Ms. Bell had waived his arguments in this regard or the Department of Labor could not. Mr. Sukup, that if we find that both ALJ decisions were supported by substantial evidence that ALJ Prance was first in time, so that decision should be reinstated? No, Your Honor. The decision on the Benefits Review Board has to be its final decision, which is the only one there. If, in fact, you find that they're both done, it's also true that both of Judge Prance's decisions have been set aside by the Benefits Review Board specifically not only on the issue of legal pneumoconiosis, but as the Board noted in its first decision where the Director did not anticipate, we raised the issue of his findings on complicated pneumoconiosis. Now, the judge is, of course, entitled to great deference on his findings of fact, but even by the standard of refute, it's not absolute. They have to be rational, they have to be supported by substantial evidence, and they have to be in accordance with applicable law and regulations. And Judge Prance's decisions fail in that regard, for he looked at the decision from Dr. Shipley and said, Dr. Shipley doesn't find any large opacities. I'm sorry, I'll just go back to Judge Thacker's question for just a minute. You make the argument in your brief that we cannot review Judge Prance's decisions, and you base that on law of the case. I want you to just accept as a hypothetical that we reject that argument. So if we find that we can review Judge Prance's decisions as well as the later ALJ decision, and so we have all three of those decisions before us, and then we decide in this hypothetical that I'm giving you that all three of them are supported by substantial evidence, right? The question that Judge Thacker's asked and that I'm curious to your response on is why then do we not, as we would in every other circumstance, go to the first-in-time decision and find that Judge Prance's decision was supported by substantial evidence, BRB therefore erred, and Judge Prance's first decision, without getting to the second or third ALJ decisions, should be reinstated? Oh, certainly, Your Honor. If the court were to find that, in fact, Judge Prance's decisions were rational, supported by substantial evidence in accordance, it would. But the problem we have with that is it would be the decision that you should make. And again, you accept the employer's argument that despite the fact that the Benefits Review Board set aside those two decisions because Judge Prance's decisions pass muster. So you agree we can review that first decision? Certainly. It's part of the record here, and they've advanced the record. The problem we have in it, it doesn't hold up as to how either the CWP or the judge did it. ALJ Prance said that Dr. Shipley's opinion did not find large— When I read your brief, I don't see anywhere in your brief where you address whether ALJ Prance's decisions were supported by substantial evidence, right? That's not the only thing that's in your brief about that, at least that I found. I'm happy for you to point me to where I need to locate it, is the section that talks about law of the case. And I think we can put that aside. Why shouldn't we find that you forfeited any ability to attack the merits of Judge Prance's decisions? Because the decision is based on the record, which is before the court. And as of now, the only decision that is before the board was the final decision of the board, which is that of reviewing the decision of Judge Johnson. Now, as I say, it's well within the court's ability to decide that Judge Johnson's findings are not, in fact, supported by the evidence. And by somehow finding that Judge Prance's are, you could say that Judge Prance's decision should control in these cases. But as I say, our argument was and was from the beginning that the judge erred initially and on the second remand on his assessment of the evidence regarding the existence of complicated pneumoconiosis. And ALJ Prance erred in his characterization of the report, as well as the fact that he failed to consider all the evidence of record in addition to the doctor's findings. So it's ALJ Johnson's decision that's before us, so that if we find that ALJ Johnson's decision was supported by substantial evidence, we don't even need to look at Judge Prance's. Yes, because neither of those concerns the final decision of the Benefits Review Board. But what if the board was wrong the very first time when it reversed ALJ Prance? Are you saying that that's irrelevant? No, it's not irrelevant. But as I say, again, I'm not disputing the power and authority of this court. You ultimately are the ones who decide if both the Benefits Review Board and the Administrative Law Judge get it right, unlike the CWP. However, we don't argue that because an ALJ says that something is a finding of fact and is supported by the record, we can't even look at the underlying overall record to see what it is. And when you do that with Dr. Shipley's report, the contention was he didn't see anything and was sure about it. When you look at what he actually said, he did see something and he was not sure about it. If he couches his terms in anything less than absolutes, does that mean his opinion cannot be considered at all? Oh, no. And as Judge Johnson said on the issue of complicated pneumoconiosis, it was a close call. But the argument from the CWP fund, and as a matter of fact, what Judge Prance said explicitly, is he's not bound to apply this court's decision in Cox here because the record reveals no large opacities. And that was our argument in the brief. If that's the case, all that a physician has to do is make sure that he never uses the phrase large opacities or complicated pneumoconiosis, and we can't look to see what the record actually holds. As Judge Johnson pointed out, there are large masses, nodules, opacities, whatever you want to call them. And the only person to address them was Dr. Forehand, who on a form provided to him by the Department of Labor to assess whether or not what you see on the x-ray is complicated pneumoconiosis. The other physicians tried to put their take on what complicated pneumoconiosis is, such as with Dr. Castle saying it's not in the right place, or Dr. Shipley, it's not surrounded, but what I say is nodules of simple pneumoconiosis. Again, as Dr. Castle did in dealing with legal pneumoconiosis, they're adding to the definition of what the statute actually holds. And again, whether or not the doctor says this is a large opacity does not control, particularly when, as Judge Johnson specifically found, we do have evidence of large opacities, nodules, masses. There is something there on the x-ray films. And Judge Trance didn't make a determination of what those were. He said they did not exist, and in the process, failed to consider all the evidence of record, including initially, what Dr. Shipley actually said about what his findings were. Same is true when you evaluate the opinions of Drs. Castle and particularly Gio. They come up with a different definition of what is legal pneumoconiosis. And as this court pointed out in Thorne, certainly if a physician has a different definition of what a statutorily defined condition is, you shouldn't accept his opinion. Thank you. We'll hear from Mr. Joiner now. May it please the court, my name is Barry Joiner, and I represent the Director of the Office of Workers' Compensation Programs. It's obviously a matter of concern to this court this morning about how the multiple conflicting decisions in this case are reviewed. I don't know that there's a black letter rule that says when you have an ALJ decision one way and then an ALJ decision another way, which one of those you necessarily would give preference to. Do you give one, go with the first decision or the latter decision? Wouldn't it be a progression? And that's really a question. Progression of decisions, you review the first one, decide if it's right or wrong. Then you review the second one, decide if it's right or wrong. I would think you would start with the first decision, Your Honor, absolutely, going back in time. I don't know that you give that decision preference. Also, I would say you do not view that decision, in this case, Judge Krantz's first decision in isolation. You also have to look at the Benefits Review Board decision, which is the intermediate step between the ALJ and this court. And the BRB said the ALJ made some mistakes in his first decision and sent it back. Same thing in his second decision. Go back to the first question, which obviously we have some interest in. Why is it, I mean, taking up Judge Traxler's idea, why isn't it similar to when we review a district court where the district court has denied a motion to dismiss, denied a summary judgment, and then there's a trial? All right, those are three separate decisions. They come up to us and the argument may well be the case should have been dismissed. And if we find that's true, then we need not address the later in time summary judgment or were there errors made at trial. We simply say the first decision, which resolves the case, governs. Why isn't that the same idea here? I think, Your Honor, in the way you were positing there, it was almost a situation where that first decision was correct almost as a matter of law. And I don't think that's the case here. I don't think you can go back and say, Judge, there was absolutely no way that the Benefits Review Board could vacate Judge Krantz's decision. There was no error there. All right, so take out a motion to dismiss and just say the first decision is a summary judgment decision. The second one is a trial. The summary judgment decision, right, there's a standard to review there, right? Same idea with the BRB, right? We look at the BRB and we say the BRB, at least in theory, we could say the BRB got this totally wrong because there was substantial evidence that supported A.L.J. Krantz's first decision. And if that's true, it's denied and we have a full stop. Your Honor, if you're in the position where you think there's no way that the board could do what they did, yes. But in your hypothetical, there was a summary judgment motion. I think, again, it's been a long time since I took civil procedure, but a summary judgment motion can only be granted where a party is going to be entitled to judgment as a matter of law. And that's not the case here. This is a case of weighing and evaluating evidence. The Benefits Review Board found that Judge Krantz made a mistake there and sent it back to him. Same thing happened again. He essentially repeated his previous findings. So Judge Krantz didn't really weigh and evaluate the evidence in any thorough way that a court could actually review what Judge Krantz had done. I think that's correct, Your Honor. If you look at what the Benefits Review Board said about Judge Krantz's first decision, they said he didn't thoroughly evaluate the X-ray evidence. And they said because he didn't evaluate the X-ray evidence, his weighing of the medical opinions on rebuttal of the 15-year presumption was also problematic because with respect to Dr. Forehand, Judge Krantz said, Dr. Forehand relied on a positive X-ray. I find the X-ray is negative. Therefore, I don't credit Dr. Forehand on legal pneumoconiosis on the question of rebuttal. So the board, I think, did have a correct basis for saying our ALJ Krantz simply did not take a good, hard look at the evidence. That's what his job was. And both times he didn't really thoroughly evaluate the evidence. Can you address just in, you know, as a representative of the Department of Labor, help me understand this idea of forfeiture in this context, right? It concerns me that the petitioner here, the appellant, focuses on Judge Krantz's decisions as we have here. In response, in your brief, for example, you drop a footnote that say, we're just not going to address those arguments, right? And so you just say, I understand that that's the primary argument being made by the appellant. But you say in the footnote, we as the Department of Labor, which I assume you have the authority to do, just refuse to engage in the adversarial process on those issues. Your Honor, and then your colleague, Mr. Bell, doesn't engage in those issues either, right? Simply does not respond to the merits of Judge Krantz's decision. Why isn't that forfeiture or waiver when we talk about the difference there? Your Honor, when you have a decision that is on appeal here, the decision of the Benefits Review Board awarding benefits, it's ultimately the burden of the petitioner to convince you that that decision was wrong. So they've got to show you that the ultimate decision of the Benefits Review Board was wrong. Now, maybe you want to say that the director will not be heard on these issues. And it's true. We did not take a position in our brief in this case. We ultimately relied on the co-respondent. And in fact, I would suggest that Mr. Bell did address those. Now, he did so in the context of the argument of law of the case, but he did defend what the Benefits Review Board did with Judge Krantz's opinions. No, no, please. I'm done. Is it your view that the principle of law of the case determines whether or not we can review A.L.J. Krantz's due decision? I don't think that that's necessarily a convincing argument, Your Honor. That's why the board didn't want to go back to it. Obviously, this court is entitled to look at those opinions, but I don't think that constitutes any sort of waiver or forfeiture on the part of the respondents to say, you know, we're accepting what Judge Krantz did. But there are two questions, right? The first question is may we review Judge Krantz? Right. On that issue, which is a jurisdictional question, Mr. Bell responds by saying law of the case for whatever that argument is worth. The second issue is on the merits, did the BRB get it right in remanding A.L.J. Krantz? On the merits, neither you, and I'm not faulting you for making the decision not to, but neither you nor Mr. Bell respond at all on the merits of whether Judge Krantz got it right or wrong. Let's assume, Your Honor, that the fact that the only thing said by the respondents was law of the case. You've still got to look and see whether or not the West Virginia CWP Fund has convinced you that what the Benefits Review Board did in this case was wrong. Whether the respondents affirmatively, you know, addressed those issues. So nobody filed a brief at all. So you didn't file a brief and Mr. Bell didn't file a brief. Your statement is that wouldn't be a waiver. We would have to make an independent judgment. That is correct, Your Honor. And the petitioner still has to show you that the decision below, the decision of the Benefits Review Board was incorrect. Even if nobody were here today to take the opposite position, they don't win simply because nobody on the other side says no. What's the basis for that claim? Help me find where that legal support for that idea. I think that flows from what appellate review is. I mean, the court reviews the decision below. So that's not unique to the black lung context. You would say that applies in any case that there can be no appellate waiver for failure to join on an adversarial issue. Your Honor, if we were, I think waiver usually comes up in the context of when you're looking to challenge a decision. And certainly we couldn't at this point, I don't think, challenge, say, Judge Krantz's particular findings. Since your argument is that the board was right, that A.L.J. Johnson was correct, then you don't need to look at Krantz because you think Johnson was correct. That's correct, Your Honor. We might look at it in reviewing the totality of the case. That is correct, Your Honor. Our position is, in this case, limited to looking at what Judge Johnson did with Dr. Castle's opinion. And our position is that Judge Johnson correctly found that that opinion was based on an improper assumption and the board correctly affirmed that decision. Mr. Johnson, I'd like to take advantage of your experience and ask a general procedural question. We tell, let me make some statements first. Almost every case that comes up here, there's a conflict in the evidence. It wouldn't be here if there weren't. And we tell A.L.J.'s, you know, you don't have to cover absolutely everything. But then if they don't, then they leave themselves vulnerable to having their decisions reversed because you can always find something that they, some evidence to the contrary they didn't address. And in this case, we fought as late at their doorstep because there was some conflicting testimony from the doctors that weren't addressed and the interplay in the doctors. My bottom line is, if you're asked at an A.L.J. convention, how do I keep from ever getting reversed? What kind of decision do I have to make? It seems to me, when I see cases like this, you almost have to tell them, you do have to cover everything. You've got to cover all of it if you want to keep from being reversed. And that, to me, is bad for the system. But I don't know, and I hope you can tell me, some other rule we could have that would make these cases cleaner, easier for everybody. And so if you would just give your opinion on that, I'm just trying to take advantage of your experience. Sure, Your Honor. My time is up. But if it's all right, I will quickly respond. I think one of the things that helps in that regard in the black lung context is we have limits on the amount of evidence that can come in now. Those rules have been in effect for almost 20 years. And so I think we see fewer cases now where an A.L.J. simply omits something entirely. I think it is the A.L.J.'s job to look at all the evidence. I mean, that's required in the statute that decisions must be based on all relevant evidence. But we require more than look at it. We seem to be requiring talk about it and explain all of it. And I think that is a challenge, Your Honor. You are correct. I think judges have to at least look at the most critical evidence. And if there is something absolutely critical that they missed, then it's appropriate to send it back. You know, you could always pick, if you're a judge, you can pick out part of some opinion or part of another opinion to support a particular conclusion. But it's problematic if you ignore defects in that opinion that might undercut the credibility of that. It is a difficult task for an A.L.J. That is absolutely true. And I certainly know A.L.J.'s, like district judges, get tired of having cases sent back to them. But sometimes it's necessary. Okay. Thank you for your answer. Thank you, Your Honor. All right. Mr. Succo? Your Honors, in the question of which decision this court should review if both are supported by substantial evidence, whether it's Krantz or Johnson, that should be affirmed. I think another good analogy is the fruit of the poisonous tree. If A.L.J. Krantz's decisions, either the first or the second, are found by this court to be supported by substantial evidence, the board had no basis to remand. It should have been affirmed. As a result, A.L.J. Johnson's second remand decision awarding benefits was unauthorized and could be analogized as the fruit of the poisonous tree in criminal law. If that's the case, you have to affirm A.L.J. Krantz's benefits denials because you found that they are supported by substantial evidence because the board should not have remanded. I mean, the action in finding a decision to be supported by substantial evidence and consistent with law is to affirm, not to vacate, reverse, or remand. Mr. Smith, despite not mentioning any of this in his brief, did spend a lot of time discussing why A.L.J. Krantz's decision is wrong. I respectfully state that those positions were forfeited by not being raised in his brief, which shouldn't be addressed today. With respect to Judge Cratchit, your comment at the end about what an A.L.J. should do, about how much depth he has to go into to essentially save his decision from being vacated or reversed, I would submit that, and I apologize, I don't remember the exact case, but there are cases saying that an A.L.J. doesn't have to be extremely exhausted in reviewing and discussing every single piece of evidence in there. He has to review the evidence that's at least the evidence that's relevant. He has to state his decision and the reasons that support his decision. What reasons supported his decision to discount Dr. Forehand? On legal pneumoconiosis? Yeah. Well, both A.L.J. Krantz and A.L.J. Johnson found that Dr. Forehand did not explain why the lung disease that Mr. Bell claimed it has is caused by coal mine dust exposure. They both said that appeared to be a summary conclusion not worthy of any weight and thus is an unreliable opinion. That doesn't appear to be contested by either A.L.J. And what about the complicated pneumoconiosis? What A.L.J. Krantz found with complicated pneumoconiosis is he credited Dr. Shipley's X-ray reading on the ground that Dr. Shipley is the most qualified of the three individuals who reviewed the X-rays because he is both a B-reader, somebody who's certified to review X-rays for black lung, and also a board-certified radiologist. And what was Dr. Forehand? Just because he wasn't a B-reader? No, Dr. Forehand is a B-reader, but he's not a radiologist. He's an allergist. And one of the two responses, I forget which, takes issue with that, but the problem is that that basis for crediting a medical opinion is well-established in board case law. I mean, there's really no dispute. Indeed, the fourth argument said that you can consider the qualifications of the expert in determining which one. In a battle of the experts, you've got to look at something. One of the things you can look at is their qualifications or background. Yeah, and I think in the context of that, I forget which case, but I think in that context it said he shouldn't just do head counting, but one of the objective characteristics to look at is their qualifications because that informs their professional judgment and makes them more trustworthy, at least, you know, as a theory anyway. And that's what Dr. Krantz said in his decision, that that was the reason? Yes, he said that in both. He certainly said that in his first decision. I believe he reasserted it in his remand decision, and also in the remand decision, he did address the board's concern that Shipley's reading may be speculative. He looked at those concerns the board raised. He said, I don't think it is speculative because Shipley is finding no large opacity. He's not saying there's a large opacity, but it might be due to something else. He addressed the board's statements about his narrative report in which, you know, he talks about potentially some other diseases causing the small opacities, and he says that's not speculation, that's simply a medical expert exercising reason judgment and realizing that there are limits to medicine. And it's essentially careful analysis, not, you know, guessing at things that might be out there. Can I get you back to what we were talking about as far as the system is concerned? It seems to me we've evolved into a situation where if an ALJ doesn't specifically mention a piece of evidence, we presume he ignored it. We presume that he didn't factor in his decision. Despite the fact, he may say, I haven't looked at everything. I've reviewed all the medical opinions, all the documents, all the x-rays, and we've evolved into the system where if you don't mention it, we presume you didn't consider it, and so you get reversed, or your decision gets vacated. So how does an ALJ protect himself when he really has considered everything, doesn't want it sent back to him, wants to give a final decision to the parties? We have a system like that. I think that's a case in point here. I think that's essentially what the Board did to ALJ Kranz. I think what it might be helpful for ALJs to do is pretty much what they're doing already, for the most part, or have been doing in the last two or three years, is that they use a very long factual summary of the evidence that essentially makes up the first half or first third of their opinions, and then do more than just say, I consider the evidence, but at least state your reasons and what evidence in the record supports that. And I would submit ALJ Kranz did that here, both in his first and his second ALJ decisions. So even if you find that the first decision maybe was lacking in substance, I think ALJ Kranz certainly addressed all this in the second decision. It should have been affirmed. I am out of time. If there are any other questions? No. Thank you. Thank you. We'll come down and greet counsel and go directly to our next case.
judges: Stephanie D. Thacker, Julius N. Richardson, William B. Traxler Jr.